EDWARD H. KUBO, JR.  #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Drug/Organized Crime Section

LOUIS A. BRACCO
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: lou.bracco@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DOUGLAS A. FARIAS, | ) CIV. NO. 06-00057 HG/BMK |
| | ) CR. NO. 03-00200-03 (HG) |
| Petitioner, | ) |
| | ) GOVERNMENT'S SUPPLEMENTAL |
| vs. | ) REPLY TO DEFENDANT DOUGLAS A. |
| | ) FARIAS 28 U.S.C. § 2255 |
| UNITED STATES OF AMERICA, | ) PETITION TO VACATE HIS |
| | ) SENTENCE; EXHIBIT "A" |
| Respondent. | ) |
| | ) |
| _____ | ) |

GOVERNMENT'S SUPPLEMENTAL REPLY TO DEFENDANT DOUGLAS A.
FARIAS 28 U.S.C. § 2255 PETITION TO VACATE HIS SENTENCE

A.   INTRODUCTION

This pleading supplements our preliminary reply to the pro se 28 U.S.C. § 2255 Petition filed by convicted Defendant DOUGLAS A. FARIAS ("Farias") on February 1, 2006.  Our preliminary reply pleading was filed March 2, 2006.

In his present collateral challenge, Farias contends that the attorney who represented him at his sentencing proceedings (Michael Green, Esq.) was ineffective because (1) his attorney did not challenge the quantity of drugs underlying Farias' guideline base offense level for sentencing purposes, and, (2) his attorney failed to raise possible mitigating facts concerning Farias' childhood.  Farias contends that these omissions prejudiced him, arguing that had these matters been raised before Judge Gillmor, he would have received a lower sentence.

Our position is that Farias' claims are without merit. Farias' initial claim that his attorney improperly failed to challenge the drug quantity for which Farias was held accountable for sentencing purposes is ludicrous.  As we explain herein, there was overwhelming evidence to show that Farias should be held accountable at the highest drug base offense level, Level 38.  Farias' companion claim that his attorney failed to raise possible mitigating facts about his childhood is also without merit, because Farias has failed to demonstrate any causal relationship between any childhood event(s) and his purposeful participation in the extensive drug trafficking conspiracy which underlies his conviction.

B.  BACKGROUND

On September 17, 2003, a 9-count (Superseding) Indictment was returned in the District of Hawaii charging Farias and seven other defendants with participating in an extensive methamphetamine trafficking conspiracy (Count 1) in violation of 21 U.S.C. §§ 846 and 841(a)(1).  Farias was also individually charged in Count 3 of the Indictment with having possessed a specific quantity of methamphetamine for distribution in violation of 21 U.S.C. § 841(a)(1), and, in Count 9 with criminal forfeiture of specified items of personal property alleged to have been proceeds of the drug conspiracy charged in Count 1. Thereafter, on February 27, 2004, pursuant to a written plea agreement, Farias pled guilty to the drug conspiracy charged in Count 1 of the Indictment, and, admitted to the forfeiture of his interest in certain personal property as to Count 9 of the Indictment.

Prior to his sentencing proceedings, Farias appeared and testified as a government case-in-chief accomplice witness at the jury trial of co-defendants Roy Frisbee and William Villa, which trial was held before Judge Gillmor in November and December 2004.  By reason of Farias' trial testimony and other cooperation, the United States Attorney filed (on May 20, 2004 and supplemented on February 17, 2005) a substantial assistance sentencing departure motion on Farias' behalf.

Sentencing proceedings were held in Farias' case on February 28, 2005. As a part of these proceedings, Judge Gillmor determined that the advisory guideline range applicable in Farias' case was total offense level 35 (criminal history category IV), which yielded a sentencing range as to incarceration of 235-293 months.[1] However, as a result of Farias' cooperation, Judge Gillmor granted the government's § 5K1.1 motion and departed downward six levels, from level 35 to level 29. This six level sentencing departure in Farias' favor resulted in a departure (advisory) guideline sentencing range of level 29 (criminal history category IV), which yielded a prison range of 121-151 months.

As to Count 1, Judge Gillmor imposed the minimum advisory 121-month prison term, to be followed by a 5-year term of supervised release. Additionally, as to Count 9, Farias' interest in the properties identified in Count 9 of the Indictment were ordered forfeited to the United States. Count 3 of the Indictment was dismissed as having been satisfied by Farias' conviction(s) as to Counts 1 and 9, and the sentences imposed thereon.

Farias did not directly appeal his conviction or sentence to the Ninth Circuit. Instead, Farias has filed the

---

[1] Judge Gillmor found that the <u>base offense</u> level in Farias' case was Level 38, which was the offense level recommended in Farias' Presentence Report ("PSR").

present § 2255 Petition, collaterally attacking (only) his sentence.

### C. INFORMATION FROM FARIAS' FORMER ATTORNEY MICHAEL GREEN, ESQ.

Pursuant to the Order by this Court issued June 8, 2006 finding that Petitioner Farias has waived his attorney-client privilege as to communication/issues raised by him in his § 2255 Petition, Farias' former attorney Michael Green, Esq., has submitted a written affidavit addressing Farias' claim(s) that he received ineffective assistance of counsel from Mr. Green.  This affidavit (dated August 11, 2006) is annexed hereto as Exhibit "A".

### D. DISCUSSION

#### 1. Effective Assistance of Counsel: Standards

Trial counsel is strongly <u>presumed</u> to have rendered effective assistance.  <u>United States v. Austin</u>, 817 F.2d 1352, 1354 (9th Cir. 1987); <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986); <u>United States v. Rodriguez-Ramirez</u>, 777 F.2d 454, 458 (9th Cir. 1985).

In order to establish that a defendant has been deprived of his right to effective assistance of trial counsel, the defendant has the burden of establishing (1) <u>specific acts or omissions</u> by his attorney which fall below the performance of reasonably competent counsel, and, (2) that such specific errors prejudiced the defendant to the extent that the errors

"undermined the reliability of the finding of guilt."  United States v. Cronic, 466 U.S. 648, 659 n.26 (1984); Strickland v. Washington, 466 U.S. 668, 687-690 (1984); United States v. Sutton, 794 F.2d 1415 (9th Cir. 1986); Cooper v. Fitzharris, 586 F.2d 1325, 1330 (9th Cir. 1978)(en banc), cert. denied, 440 U.S. 974 (1979).

To demonstrate prejudice as a result of his attorney's ineffectiveness, a defendant must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  Strickland v. Washington, supra, 466 U.S. at 691-696.  Courts should review such claims skeptically.  United States v. Hoffman, 733 F.2d 596, 604 (9th Cir. 1984)(Nelson, Jr., dissenting), cert. denied, 469 U.S. 1039 (1984).  In examining attorney conduct, the court must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment.  Nix v. Whiteside, 475 U.S. 157, 165 (1986).

The Ninth Circuit requires that a defendant claiming ineffective assistance of counsel specifically identity the acts or omissions that are alleged not to have been the result of reasonable professional judgment; then the court  must determine, in light of all the circumstances, whether the identified acts or omissions were outside the wide range of professionally competent assistance.  United States v. Schaflander, 743 F.2d 714, 717-718

(9th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1058 (1985).  It is important to bear in mind that counsel is not required to perform perfectly, <u>Hill v. Lockhart</u>, 731 F.2d 568, 572 (8th Cir. 1984), <u>aff'd</u> (en banc), 764 F.2d 1279 (8th Cir. 1984), <u>aff'd</u>, 474 U.S. 52 (1985); <u>United States v. Medina-Verdugo</u>, 637 F.2d 649, 653 (9th Cir. 1980) and, ". . . the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  <u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 690.

An ineffective assistance claim based on counsel's duty to present a defense and/or investigate must be considered in light of the strength of the government's case.  <u>Eggleston v. United States</u>, 798 F.2d 374 (9th Cir. 1986).  "A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  <u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 691.  As the Supreme Court re-emphasized in citing <u>Strickland v. Washington</u>, <u>supra</u>, in <u>Burger v. Kemp</u>, 483 U.S. 776, 789 (1987):

>     Judicial scrutiny of counsel's performance
>     must be highly deferential.  It is all too
>     tempting for a defendant to second guess
>     counsel's assistance after conviction or
>     adverse sentence, and it is all too easy for
>     a court, the examining counsel's defense
>     after it has proved unsuccessful, to conclude
>     that a particular act or omission of counsel

>    was unreasonable.  (Citation omitted)  A fair
>    assessment of attorney performance requires
>    that every effort be made to eliminate the
>    distorting effects of hindsight, to
>    reconstitute the circumstances of counsel's
>    challenged conduct, and to evaluate the
>    conduct from counsel's perspective at the
>    time.

2.  Ineffective Assistance of Counsel Claim Re Absence of Challenge to Accountable Drug <u>Quantity for Sentencing Purposes.</u>

The record in Petitioner Farias' case, the record as to related proceedings as to Farias' several co-defendants (including the <u>Roy Frisbee/William Villa</u> trial), and the affidavit of Mr. Green annexed as Exhibit "A", together conclusively demonstrate that Farias' <u>claim</u> that Mr. Green failed to provide effective assistance of counsel by electing not to challenge the quantity of drugs for which Farias was held accountable, is ludicrous.  Simply put, there was overwhelming evidence before the Court which included:  Farias' pre-arrest oral admissions to FBI agents (see PSR ¶ 17), testimony and information from multiple cooperating co-defendants (see PSR ¶¶ 15, 20a, 20b), evidence of the quantitative and qualitative analysis of methamphetamine seized from Farias and his co-conspirators (see PSR addendum dated February 15, 2005), and, a special jury verdict as to drug quantities found beyond reasonable doubt, which separately and together conclusively demonstrate that Farias was appropriately held accountable (at

guideline base offense Level 38) for 15 kilograms or more of generic methamphetamine and/or 1.5 kilograms or more of "ice".

In lieu of rehashing our many previous submissions to the Court to support the Level 38 base offense determination as to Farias, we refer the Court to the following materials already in the record which support the Court's determination:

- a) Addendum No. 2 (dated February 15, 2005) to Farias' Final Presentence Report;

- b) Government's Memorandum in Support of its Position that the Appropriate Base Offense Level for Defendant Farias is Level 38 filed (under seal) on May 27, 2004;

- c) Special Jury Verdict form (from the Roy Frisbee/William Villa trial) filed December 2, 2004 documenting the trial jury's factual finding beyond a reasonable doubt that the underlying conspiracy offense involved 15 kilograms or more of generic methamphetamine and 1.5 kilograms or more of "ice".

Beyond this, as Mr. Green's affidavit acknowledges, Farias does not have any good faith basis upon which to contest the finding(s) of these drug quantities. In order to do so, Farias would have to contradict his grand jury testimony as well as his public testimony at the Roy Frisbee/William Villa trial. And, although a written proffer letter protects Farias from the use of his own grand jury/trial testimony against him, such

proffer would not apply (by its terms) <u>if</u> Farias provided sworn testimony which contradicts his grand jury or trial testimony.

For all the reasons recited above, Farias was properly held accountable for sentencing purposes at advisory guideline base offense Level 38. Accordingly, Mr. Green did not render ineffective assistance as to Farias' drug accountability.

3. Ineffective Assistance of Counsel Claim Based on Failure to Raise Assertedly Mitigating <u>Childhood Events.</u>

Mr. Greens' affidavit reports that Farias never provided Mr. Green with any information or evidence as to any childhood event which (even colorably) had a demonstrable causal connection with Farias' adult participation in the extensive <u>Frisbee</u> drug conspiracy. As Mr. Green's affidavit also shows, at the time of his participation in the conspiracy, Farias was gainfully employed as a union truck driver deriving substantial income, and, also coached basketball in a youth league as a volunteer. Farias presents no information or evidence in his Petition to support his bald assertion that he would have received a lower sentence had generalized information that he was sometimes unsupervised as a child been reported to Judge Gillmor.

Significantly, much of Farias' personal information about his life before joining the <u>Frisbee</u> drug conspiracy was before Judge Gillmor. Judge Gillmor presided at the <u>Roy Frisbee/William Villa</u> trial at which Farias gave lengthy

10

testimony.  Farias' testimony, which took place over several trial days, included testimony about his personal background, family, and lifestyle.  Accordingly, as the judicial officer presiding over Farias' testimony, Judge Gillmor had first hand testimonial information about Farias' background well beyond the information included in Farias' presentence report.[2]  None of the information about Farias' childhood, in his § 2255 Petition or his trial testimony, supports a downward sentencing departure.

It bears emphasis that U.S.S.G. § 5H1.12 (policy statement) provides that lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are <u>not</u> (ordinarily) relevant grounds for departure.  Accordingly, Mr. Green was not ineffective in failing to raise assertions as to Farias' stressful childhood.

4. Mr. Green's Effectiveness as Farias' Attorney is Demonstrated by the Substantial Sentencing <u>Departure Farias Received for Cooperation.</u>

Finally, it bears emphasis that given Farias' extensive participation in the Frisbee drug conspiracy for a substantial period of time, and, the substantial six-level cooperation sentencing departure awarded to Farias by Judge Gillmor, it is highly improbable that even the great magician Houdini could have

---

[2]   We note that PSR ¶ 51 reflects that Defendant was raised by a single parent.

persuaded Judge Gillmor to reduce Farias' sentence below the 121 month sentence which was imposed.

Our view in this regard is supported by the Court's comments at Farias' sentencing hearing. Acknowledging Farias' cooperation with the Government (which earned Farias a six-level sentencing departure), Judge Gillmor expressly articulated that, in her view, a criminal defendant's cooperation can only reduce a sentence to a point. Judge Gillmor commented that, at some point, each defendant must be held accountable for his offense conduct. Judge Gillmor explained that, after cooperation is considered, the ultimate sentence which is fashioned as to each individual defendant must also be meaningful in the context of the individual's participation in the offense, and, the sentence(s) received by other offense participants.

We believe that because Judge Gillmor was fully aware of Farias' central and extensive participation in the <u>Frisbee</u> drug conspiracy, his cooperation, and his personal and family background, the vague assertions now made by Farias about stressful childhood circumstances would have not affected Farias' sentence, even had they been raised at his sentencing hearing. We believe this is particularly true in light of the absence of any demonstrated causal connection between any childhood event, and Farias' purposeful and central adult participation in the very extensive <u>Frisbee</u> methamphetamine trafficking conspiracy.

E.. <u>CONCLUSION</u>

WHEREFORE, for all of the reasons stated herein, it is respectfully requested that Farias § 2255 Petition be dismissed.

DATED: August 11, 2006, at Honolulu, Hawaii.

<div style="margin-left: 50%">
Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By <u>/s/ Louis A. Bracco</u>
   LOUIS A. BRACCO
   Assistant U.S. Attorney
</div>

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

<u>Served by First Class Mail</u>:

| | |
|---|---|
| Douglas A. Farias, #89283-022<br>USP Florence Admax<br>Federal Prison Camp<br>P.O. Box 8500<br>Florence, CO  81226<br><br>Petitioner, <u>Pro Se</u> | August 11, 2006 |
| Michael Green, Esq.<br>345 Queen Street, 2nd Floor<br>Honolulu, HI 96813<br><br>Former Attorney for Petitioner | August 11, 2006 |

DATED: August 11, 2006, at Honolulu, Hawaii.

                                                   /s/ Shelli Ann H. Mizukami