IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DOUGLAS A. FARIAS, ) | CIV. NO. 06-00057 HG/BMK |
| ) | CR. NO. 03-00200-03 (HG) |
| Petitioner, ) | |
| ) | AFFIDAVIT OF MICHAEL J. |
| vs. ) | GREEN, ESQ.; ~~EXHIBIT "A"~~ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |
| _____ ) | |

AFFIDAVIT OF MICHAEL J. GREEN, ESQ.

MICHAEL J. GREEN, being duly sworn, hereby deposes and says:

1. I am an attorney duly licensed to practice law in the state and federal courts of Hawaii. I was initially admitted to the practice of law in Illinois in 1968, and, in approximately 1988-89 relocated my law practice to Hawaii. Since relocating to Hawaii and becoming admitted to practice in the state and federal courts of Hawaii, I have personally participated in more than 30 trials in Hawaii courts.

2. This Affidavit is submitted pursuant to an Order issued by Chief Judge Helen Gillmor in Civil No. 06-00057 HG/BMK, filed June 8, 2006, finding that Petitioner Douglas A. Farias ("Farias") has waived his attorney-client privilege as to communication/issues raised by him in his Section 2255 Petition. This Affidavit addresses claims made by Farias in his Section 2255 Petition. Farias' Petition seeks to vacate the sentence

**EXHIBIT A**

imposed upon his conviction by plea in February 2005, on the basis that I did not provide him with effective assistance of counsel while representing him in the sentencing phase of that case.

    3.   In short, Farias contends that I was ineffective because (1) I did not challenge the quantity of drugs underlying Farias' base offense level for sentencing purposes, and, (2) because I failed to raise asserted mitigating information concerning Farias' childhood. Farias contends that these omissions prejudiced him, claiming that had these matters been raised, he would have received a substantially lower sentence.

    4.   I represented Farias as retained defense counsel throughout the criminal proceedings pending against him in Cr. No. 03-00200 HG, and, at his sentencing hearing. During the course of my representation of Farias, I met with him on numerous occasions and discussed issues relevant to the charges against him, his ultimate guilty plea, and, his sentencing hearing. During the pendency of the criminal proceedings, I also reviewed various discovery materials provided by the Government, and, discussed these materials with Farias.

    5.   Among the items of discovery I reviewed was information showing that Mr. Farias was stopped on the Likelike Highway by members of law enforcement. He was driving a rental car. Approximately one pound of crystal methamphetamine and

2

substantial sums of cash were seized from the trunk of that vehicle. Mr. Farias was not arrested at that time. Shortly thereafter federal agents executed a search warrant at Mr. Farias' home in Kaneohe. During the execution of that warrant, Mr. Farias learned that some of his life long friends had been cooperating against him. Mr. Farias gave the agents an unprotected statement admitting his role in a massive drug ("ice") conspiracy.

6. As a result of my discussions with Farias, Farias voluntarily elected to plead guilty and to cooperate with the Government, and, to provide information and/or testimony against the other co-conspirators charged in his case. Based upon my advice and a review of the evidence against him, Farias made an informed decision to cooperate in the hopes of minimizing his own sentence. Farias was well aware that any helpful information and/or testimony which he provided to the Government would be brought to the attention of Judge Gillmor, his sentencing Judge. I assisted Farias as necessary during his period of cooperation.

7. Farias' present claim that I failed to effectively represent him, because I did not challenge the quantity of drugs for which he was held accountable at sentencing, has no foundation in fact. First, I did initially challenge the quantity of drugs which the Government contended underlies the conspiracy offense to which Farias pled guilty. However, the

3

Government ultimately presented compelling evidence in the form of a (sealed) sentencing pleading (filed May 27, 2004) summarizing co-conspirator testimony and methamphetamine seizures evidencing that Farias should be held accountable at advisory guideline Level 38). Farias provided me with no information and/or evidence which might have enabled me to refute the Government's position.

8. Beyond this, I knew from the Rule 16 discovery in Farias' case that Farias had made unprotected oral statements to FBI agents effectively admitting to distributing multi-pound quantities of methamphetamine (on behalf of the Frisbee brothers) to co-conspirator Donald Morton. I also knew from the discovery that several other cooperating co-conspirators, including co-conspirators Jack Frisbee and Donald Morton, had provided information/testimony to the Government that dozens of pounds of methamphetamine were distributed by Farias pursuant to the underlying conspiracy offense. I also knew that quantifiable quantities of methamphetamine (both as to weight and purity) had been seized individually from Farias, and co-conspirators Roy Frisbee and Tony Valentin, which seizures upon aggregation cumulatively established a guideline base offense level of 38. Thus, no viable avenue was presented for me to factually challenge the base offense level in Farias' case.

9. It also bears emphasis that the defense strategy which was adopted in Farias' case was for Farias to endeavor to minimize any jail sentence by cooperating. Farias took substantial steps in furtherance of cooperation by testifying before a grand jury, and, as a Government witness in the <u>Roy Frisbee/William Villa</u> trial. I knew that, in the face of the testimony given by Farias in the grand jury and at trial (admitting to distributing voluminous quantities of methamphetamine), that I could not allow Farias to take the witness stand to turn an about face and deny involvement as to such quantities of methamphetamine. To do so would have risked forfeiting the cooperation credit that Farias had already earned, and possibly expose him to a perjury prosecution. Thus, for the reasons explained herein, any challenge to the quantity of drugs for which Farias was held accountable at his sentencing hearing would have been futile.

10. Farias' claim that I failed to provide him with effective assistance of counsel at sentencing because I did not raise mitigating facts concerning his childhood upbringing is likewise without merit. In this regard, Farias claims in vague terms that he was raised " . . . in a home environment where he and his siblings were left for days without any supervision" where he had to fend for himself. Farias speculates that had

this information been presented to Judge Gillmor, he would have received a lower sentence.

11. I did not present "childhood information" to the sentencing Court because I could discern no causal connection between Farias' childhood, and the offense of conviction. From my many meetings and other contacts with Farias, I knew that he was gainfully employed as a Teamster's union driver and derived sufficient income to support himself and his family. I also knew that he volunteered time as a coach in a youth basketball league. I was unable to discern any emotional or psychological situation arising from his background which caused or contributed to Farias' participation in the drug conspiracy, with perhaps the exception of his own use of methamphetamine as an adult. Additionally, I was aware that Mr. Farias served five years in prison on prior state offenses. In my discussions with him about those convictions he never raised an issue about his childhood that would have alerted me of a character flaw that caused him to violate criminal statutes.

12. Because Farias' prosecution did not involve a capital case, and, because there was no demonstrable causal connection between any aspect of Farias' childhood and the extensive drug conspiracy for profit which formed the basis of his conviction, I concluded there was no basis to present this information to Judge Gillmor or to seek a sentencing departure.

13. Finally, it bears emphasis that as a result of the defense cooperation strategy, Farias received a substantial 6-level cooperation sentencing downward departure from Judge Gillmor. In awarding this departure, Judge Gillmor departed downward from the otherwise applicable advisory guideline Level 35 (Criminal History Category IV) which projected a sentencing range of 235-293 months, to Level 29 (Criminal History Category IV) and a range of 121-151 months. Farias was sentenced at the low end, 121 months. Thus, Farias received a sentence reduced by (at least) 114 months (more than nine years) as a result of my advice and his decision that he provide cooperation. It is highly improbable that Farias could have received a lower prison sentence under any circumstances.

FURTHER AFFIANT SAYETH NAUGHT.

_____
MICHAEL J. GREEN, ESQ.

Subscribed and sworn to before me this 11th of August 2006

_____
Notary Public, State of Hawaii
Printed Name: ROBIN MELCHOR
My commission expires: 3-30-08

7