IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DOUGLAS A. FARIAS, | ) | CIVIL NO. 06-00057 HG-BMK |
| | ) | |
| Movant, | ) | CRIM. No. 03-000200 HG-03 |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**ORDER DENYING 28 U.S.C. § 2255 MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE
BY A PERSON IN FEDERAL CUSTODY**

This matter is before the Court upon the "Motion to Vacate, Set Aside, or Correct Sentence" (Doc. 465) pursuant to 28 U.S.C. § 2255 by the pro se prisoner, Douglas Farias ("Movant" or "Farias"). Having considered the record, including the Motion with Supporting Memorandum (Doc. 465, 466), Response (Doc. 476), and Supplemental Response with Affidavit of Counsel (Doc. 486), the Court denies the motion for the following reasons:

**I. Facts and Procedural History**

On September 17, 2003, a federal Grand Jury returned a nine-count Second Superseding Indictment against Movant Douglas Farias and seven co-defendants, charging them with participating in a large-scale conspiracy to distribute methamphetamine. Movant was charged in three counts (Counts #1, 3, and 9).

On February 27, 2004, Movant entered into a written plea

agreement (Doc. 143) and entered his guilty plea to Counts 1 and 9. Under Count 1, he admitted to violating 21 U.S.C. § 846 by conspiring to distribute and possess with the intent to distribute over fifty (50) grams of methamphetamine, a Schedule II controlled substance. With respect to Count 9, he admitted the basis for forfeiture of specified property as "drug proceeds". Count 3 was later dismissed upon the motion of the United States.

At the trial of co-defendants Roy Frisbee and William Villa in late 2004, Movant testified for the prosecution as an accomplice witness regarding the distribution of large amounts of methamphetamine. As a result of his cooperation, the United States moved for downward departure pursuant to United States Sentencing Guideline ("U.S.S.G.") § 5K1.1 for substantial assistance.

On February 28, 2005, the Court granted the government's motion and departed downward by six levels. Movant was assigned a base offense level of 38, minus three points for acceptance of responsibility and timely entrance of his guilty plea. Given a criminal history category of IV, and a total offense level of 35, Movant's sentencing range was calculated at 235 to 293 months. After the six-level departure, the offense level was reduced to 29, yielding a range of 121 to 151 months. The Court sentenced Movant to 121 months in prison, to be followed by five years of supervised release. The property ("drug proceeds") charged in

Count 9 were ordered forfeited.

In his plea bargain, Movant waived his right to appeal. He also waived the right to collaterally challenge his sentence, except upon grounds of ineffective assistance of counsel. (Doc. 143, Plea Agreement at ¶ 19(a).) He did not appeal the sentence. On January 26, 2006, he signed and mailed the present § 2255 motion.

## II. Issues Presented on § 2255

Movant alleges that his counsel was ineffective because 1) he did not "properly challenge the quantity of drugs that were used to sentence" him, (Doc. 465 at 5), and 2) his counsel did not submit mitigating facts regarding Movant's upbringing. (Doc. 465 at 6). He requests that his sentence of 121 months be reduced "to 60 months with a recommendation to serve that sentence in Hawaii." (Doc. 465 at 14.)

## III. Analysis

### Statutory Jurisdiction

The federal habeas statute, 28 U.S.C. § 2255, provides that: "A prisoner in custody....may move the court which imposed the sentence to vacate, set aside or correct sentence." Movant has correctly filed his motion in the sentencing court. When he filed this motion, he was in federal custody at the Federal Prison Camp in Florence, Colorado.

**Applicability of Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Successiveness**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996, and its provisions apply to habeas petitions and § 2255 motions, such as the present one, filed after such date. <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997); <u>Williams v. Taylor</u>, 529 U.S. 362, 402 (2000). The AEDPA requires courts to examine a § 2255 motion to determine whether it is "successive". Movant indicates he has not filed any other § 2255 motions, and the record does not reflect any.

**One-Year Period of Limitations**

A § 2255 motion to vacate by a federal prisoner is subject to a one-year period of limitation that generally runs from "the date on which the judgment of conviction becomes final". 28 U.S.C. § 2255, ¶ 6(1); and <u>Clay v. United States</u>, 537 U.S. 522, 524 (2003). Movant did not appeal and his conviction was final when the time to appeal expired. Judgment entered on March 10, 2005. (Doc. 385.) Farias signed his § 2255 motion (Doc. 465) on January 26, 2006 and indicated he was mailing it on such date. Under the "mailbox rule" for pro se prisoners, this is deemed to be the filing date for the motion. <u>Houston v. Lack</u>, 487 U.S. 266, 272 (1988). He timely filed his motion within one year of the date his conviction was final.

**Relevant Standard**

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

**Issue 1: Whether Defendant Received Ineffective Assistance of Counsel**

Criminal defendants have the right to effective assistance of counsel under the Sixth Amendment. <u>Evitts v. Lucey</u>, 49 U.S. 387, 396-97 (1985). To prevail on an ineffectiveness claim, the prisoner must show 1) objectively deficient performance by counsel, and 2) resulting prejudice to the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." <u>Id</u>. at 686.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id</u>. at 690. Movant must overcome the "strong presumption that his counsel's conduct falls

within the wide range of reasonable professional assistance." Id. at 689.

Movant argues that his counsel did not "object to the drug quantity attributed to him at sentencing". (Doc. 466, Memo. at 1.)  He also fleetingly alleges that his counsel did not challenge the purity of the drugs.  Movant speculates that his base offense level might have been lower and that, but for counsel's alleged failure to object, he could have received a lower sentence.

Movant has not shown that counsel's performance was objectively deficient on such a basis. As the United States accurately points out, "given (1) the abundant information and evidence as to the drug quantities underlying the base offense level for the [Movant and] several [of the other] conspirators in this case, and, (2) the generous 6-level cooperation sentencing departure awarded to Farias by Judge Gillmor, it is highly improbable that Farias would have received a lower prison sentence than 121 months under any circumstances." (Doc. 476, Response at 5.)  It is noted that Movant faced a mandatory minimum sentence of 120 months for his offense.

The United States asserts that "there was overwhelming evidence to show that Farias should be held accountable at the highest drug base offense level, Level 38". (Doc. 486, Supp. Reply at 2.)  Such evidence included Farias' own admissions to

FBI agents regarding his participation in a massive conspiracy to distribute methamphetamine, as well as the testimony of multiple cooperating co-defendants. In addition, the quantities of "Ice" seized from Farias and his co-conspirators were submitted to laboratory testing, which established the quantity and purity of the methamphetamine.

With respect to the trial of several co-conspirators, the jury found in a special jury verdict that the conspiracy involved over fifteen (15) kilograms of generic methamphetamine, including 1.5 kilograms or more of "Ice". (Doc. 327, Special Jury Verdict Form as to Roy Frisbee, December 3, 2004).

Movant's counsel points out in his affidavit that he did initially dispute the drug quantity set forth in the United States' Sentencing Statement.  (See Doc. 486, Exh. A, ¶ 7; and see, Defendant's Response to Government's Sentencing Statement, filed May 7, 2004.)  Movant's counsel further indicates that the United States subsequently presented "compelling evidence" in a sealed sentencing pleading filed on May 27, 2004, indicating that he had no factual basis to pursue any further challenge to the drug quantity for which Farias was accountable. (Doc. 486, Exh. A, ¶¶ 7-8.)  Movant's counsel indicates that such document summarized co-conspirator testimony and the various quantities of methamphetamine seized, indicating that Farias was properly accountable at guideline level 38.  Movant's counsel also

indicates that he reviewed discovery materials reflecting Farias' own admission that he distributed multi-pound quantities of methamphetamine for the Frisbee brothers on an ongoing basis. (Doc. 486, Exh. A, ¶ 8.)

Movant's counsel was also aware that Farias had been intercepted by police while in possession of 445.4 grams of "Ice" and that other co-conspirators had indicated that Farias had distributed well over fifty pounds of methamphetamine during the conspiracy. For example, the record reflects that co-defendant Donald Morton was held accountable for over 50 pounds of methamphetamine, and that Morton's source for this methamphetamine was Farias.

Additionally, co-Defendant Jack Frisbee testified that from at least 2001 and up until April 11, 2003, he supplied between 300 and 600 pounds of methamphetamine to Douglas Farias and Roy Frisbee for distribution to others in Hawaii. (See Doc. 386, Addendum to Presentence Report, p. 2A); and see, United States v. Villa, 2006 WL 1933067 (9th Cir. July 12, 2006)(observing that the methamphetamine trafficking conspiracy "moved between 300-600 pounds of methamphetamine from California to Hawaii and distributed it in Hawaii").

Movant's counsel aptly points out that his client could hardly testify against his co-conspirators regarding distribution of large quantities of methamphetamine, and then risk perjury

prosecution or loss of his downward departure by denying involvement with such quantities.

With respect to the 445.4 grams of "Ice" seized from Farias' vehicle, Farias has not put forth any plausible basis for his counsel to have challenged the drug purity, which was established by laboratory testing at 99%. Defense counsel is not expected to assert frivolous or factually baseless objections at sentencing in order to avoid a later charge of "ineffectiveness". Movant's counsel made such decision in the proper exercise of reasonable professional judgment. Movant has not overcome the "strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance..." Strickland, 466 U.S. at 689.

Movant admitted to participation in the conspiracy, and given the overwhelming evidence of the large quantities of methamphetamine involved in the conspiracy, he was properly sentenced. Movant does not suggest any plausible basis for his counsel to have objected to the quantity or purity of the drugs for which he was held responsible. Movant was ably represented by experienced defense counsel who obtained a very advantageous plea bargain that greatly benefitted him. Movant has shown no objectively deficient performance by his counsel, much less any resulting prejudice. Movant has not shown that his counsel was constitutionally "ineffective" under the requirements of

Strickland.

**Issue 2: Whether Counsel Was Ineffective for Not Submitting Mitigating Facts Regarding Farias' Upbringing**

Next, Movant generally alleges that his retained counsel "should have presented to the sentencing judge the extreme poverty and hardship that he had to experience in his childhood and should have requested a downward departure" on such basis. He claims that he was "raised in a home environment where he and his siblings were left for days without any supervision", that "he had to fend for himself and his siblings which eventually led to a life of crime". He concludes that his counsel was therefore ineffective. Movant's argument is unsupported by any specific facts and presents no basis for § 2255 relief.

Although Movant cites Visciotti v. Woodford, 288 F.3d 1097, 1110-17 (9th Cir. 2002) in support, such capital case is readily distinguishable from the present one, and moreover, has been reversed by the United States Supreme Court. In Visciotti, a state prisoner subject to the death penalty brought a § 2254 petition alleging that his counsel had been ineffective at the mitigation phase. The California Supreme Court found that even if counsel's performance at the mitigation phase was assumed inadequate, the petitioner had suffered no prejudice because the aggravating factors were so severe. The Ninth Circuit Court of Appeals disagreed, but was reversed by the United States Supreme

Court in Woodford v. Visciotti, 537 U.S. 19 (2002)(holding that the state court's decision that trial counsel's representation did not prejudice petitioner was not contrary to, or did not involve an unreasonable application of, the Supreme Court's decision in Strickland.).  The citation relied upon by Farias provides no support for his allegation that his counsel was ineffective at sentencing.

The United States asserts that Farias has not shown  any causal relationship between the alleged short-comings of his childhood and his purposeful and extensive participation as an adult in a major drug-trafficking conspiracy. The United States points out that at the time of his arrest, Farias was gainfully employed as a union truck driver, had a substantial lawful income to support his family, and was coaching sports in a youth league. In addition, under the policy statement in U.S.S.G. § 5H1.12, a disadvantaged upbringing and a lack of guidance as a youth are ordinarily not relevant grounds for departure at sentencing.

Movant's allegations of deprivation as a youth are vague, generalized, and self-serving. He has not set forth any specific relevant facts that counsel should purportedly have introduced in this non-capital case. The United States notes that Farias testified as to his family background at the trial of several co-conspirators, and that much of his family background was already known to the judge at sentencing due to his testimony and the

Presentence Report.

Finally, Movant's counsel indicates in his affidavit that he had many meetings and other contacts with Farias, but discerned nothing from Farias' childhood that might have caused or contributed to the Movant's participation in the methamphetamine conspiracy as an adult at the age of 44.  Movant's allegation that he would have received an even lower sentence is speculative and largely refuted by the record. This Court indicated at sentencing that even with a downward departure for substantial assistance, the sentence must still reflect the seriousness of the offense. His claim that counsel should have somehow obtained a sentence of only sixty months for his very serious offense is entirely unfounded.  Movant has not shown that his counsel's performance was objectively deficient, much less that any alleged error resulted in prejudice to the Movant.

**No Hearing Required**

No hearing is required if the record conclusively shows that the movant is not entitled to any relief.  Shah v. United States, 878 F.2d 1156, 1158 (9th Cir.), cert. denied, 493 U.S. 869 (1989).  The United States Supreme Court has observed that "[t]o allow indiscriminate hearings in federal post-conviction proceedings ....would eliminate the chief virtues of the plea system-- speed, economy, and finality." Blackledge v. Allison, 431 U.S. 63, 71 (1977); see also, United States v. Timmreck, 441

U.S. 780, 784 (1979). The allegations in the present § 2255 motion concern legal issues that can be decided on the record before the Court.  A hearing would not help resolve any issues here.

**Certificate of Appealability ("COA")**

When a district court rules upon a § 2255 motion, a certificate of appealability ("COA") may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right", 28 U.S.C. § 2253(c)(2), and shall indicate which specific issues satisfy the "substantial showing" requirement. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

Movant has not made a substantial showing of the denial of his Sixth Amendment right to effective counsel. The record reflects that he was ably represented by experienced defense counsel. Although he alleges that counsel should have challenged the quantity or purity of drugs, he has not shown any plausible basis on which to object. Movant's counsel and the government have pointed to the overwhelming evidence of drug quantity in this case. The record indicates the purity of the drugs was established by laboratory testing.

With respect to Movant's additional argument that counsel should have submitted facts about his  upbringing, Movant's allegations are vague and  generalized. Although he refers to the

holding in an appellate case regarding deficient efforts by counsel at the mitigation phase of a capital case, the present case is not a death penalty case, and the cited case was reversed by the United States Supreme Court. Movant's speculation that he might have received an even lower sentence is belied by the record. Jurists of reason would not debate these matters, and such claims do not deserve encouragement to proceed further.

## CONCLUSION

It is **ORDERED** that:

1. the "Motion to Vacate or Set Aside Sentence" (Doc. 465) by Movant is **DENIED** with prejudice, and

2. the Movant is not entitled to a certificate of appealability.

DATED: Honolulu, Hawaii, September 29, 2006.



                                       **/s/ Helen Gillmor**
                                       Chief United States District Judge

Civil No. 06-00057 HG-BMK and Crim. No. 03-00200 HG-03; <u>Douglas A. Farias v. United States</u>, ORDER DENYING 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY